## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JAMES T. DAVIS,** )<br>)<br>**Plaintiff,** )<br>)<br>)<br>vs. )<br>)<br>**NEBRASKA FURNITURE MART, INC.,** )<br>**EVANS & MULLINIX, P.A., and** )<br>**JO ANN BUTAUD,** )<br>)<br>**Defendants.** )<br>_____ ) | Case No. 11-2559-JAR |

## **MEMORANDUM AND ORDER**

Plaintiff James Davis filed this action alleging improprieties in debt collection efforts by the Defendants. The first count of the Complaint alleges that the law firm of Evans & Mullinix, P.A., and one of the firm's attorneys, Jo Ann Butaud, are liable to Plaintiff under the federal Fair Debt Collection Practices Act ("FDCPA"). The second count alleges that all three named Defendants are liable for the common law tort of abuse of process. A third count alleges that Defendant Nebraska Furniture Mart ("NFM") is liable under the Kansas Consumer Protection Act ("KCPA"). The matter is now before the court on Nebraska Furniture Mart's Motion to Dismiss for Failure to State Claim (Doc. 7) the two claims against it under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied in part. The motion is granted with respect Plaintiff's claim against NFM for violation of the KCPA, and also as to Plaintiff's abuse of process claim against NFM insofar as it is based on the October 6, 2010 bench warrant and the multiple debtor examinations. The motion to dismiss Plaintiff's abuse of process claim against NFM is denied insofar as it is based on the February 9, 2010 Citibank garnishment

**I.      Rule 12(b)(6) Standard**

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[1]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[3] but requires more than "a sheer possibility."[4]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[5]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7]  Thus,

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

[4] *Id.*

[5] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[6] *Id.* (citing *Twombly*, 550 U.S. at 556).

[7] *Iqbal*, 129 S. Ct. at 1949–50.

the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## II.     Summary of Complaint

The following allegations are taken from Plaintiff's Complaint. As noted above, well-pleaded factual allegations in the Complaint are assumed to be true for purposes of determining whether it states a claim for relief. On October 26, 2007, Plaintiff and NFM entered into an agreement whereby NFM extended a line of credit to Plaintiff and Plaintiff used the credit to purchase furniture and other goods from NFM. Plaintiff's financial condition deteriorated thereafter and he was unable to make the required payments on the NFM account. With the account in default, NFM hired the defendant law firm of Evans & Mullinix and one of its attorneys, Defendant Jo Ann Butaud, to collect the balance due.

On March 20, 2009, Butaud sent Davis a "dunning" letter informing him that NFM had declared the balance due and threatening to file suit if he failed to make arrangements to pay. On March 27, 2009, Butaud filed suit against Davis in Wyandotte County District Court in the case of *Nebraska Furniture Mart, Inc. v. James T. Davis*, No. 2009-LM-002798. On May 20,

---

[8] *Id.* at 1950.

[9] *Id.*

[10] *Id.* at 1949.

2009, a consent judgment was entered against Davis for $1,987 plus costs, interest and fees.

On September 2, 2009, Butaud filed an application with the court for an Examination of Judgment Debtor. Judge Grosko of the Wyandotte County District Court approved the application and issued an Order for Hearing in Aid of Execution with a hearing date of October 14, 2009. Plaintiff was served with notice of the order and appeared at the hearing. He testified that he was not then employed and that he had little if any property with which to satisfy the judgment.

On January 15, 2010, Butaud sought and was granted an order of garnishment from the Wyandotte County District Court to garnish any funds of Plaintiff held by Brotherhood Bank. The garnishment was released after the bank responded that it did not hold any of Plaintiff's funds in its possession.

On February 9, 2010, Butaud sought and was granted an order of garnishment directed to Citibank. The Kansas Department of Labor, through Citibank, deposits unemployment benefit payments onto debit cards, which allows the recipient to use the card wherever Visa debit cards are accepted. Citibank had no branch banks in Kansas or Missouri, a fact allegedly known to Defendants. At the time, Plaintiff was unemployed and was receiving unemployment benefits via a Citibank Visa debit card. According to the Complaint, the Defendants knew when they filed the February 9 garnishment that Davis was receiving unemployment benefits on a Citibank Visa debit card and knew that such benefits were exempt from execution. Plaintiff filed a request for hearing on the garnishment, asserting that the funds sought by the garnishment were exempt, and he provided documentation to that effect at a March 4 hearing. Judge Grosko ordered the garnishment released, and Butaud filed a release on March 17, 2010.

On April 13, 2010, Butaud applied for and was granted an Order to Appear for Hearing in Aid of Execution, with a hearing date of May 19, 2010.  Plaintiff appeared on May 19 and testified that he was still unemployed and still had little if any assets to satisfy the judgment. The Complaint alleges that Defendants had no reason to believe when they sought the hearing that Plaintiff had experienced any change in financial circumstances that would have allowed him to pay the judgment.

Less than 10 days later, on May 28, 2010, Butaud filed an application for Examination of Judgment Debtor.  The application was granted by Judge Grosko and a hearing was set for July 28, 2010.  Plaintiff again alleges that Defendants had no reason to believe that he had experienced any change in financial circumstances.  Plaintiff did not appear for the July 28, 2010 hearing. Judge Grosko issued a contempt citation.

On September 3, 2010, Butaud submitted a motion asking that the Wyandotte County District Court set a hearing on the contempt citation.  The court set the hearing for October 6, 2010. Mr. Davis did not appear at the October 6 hearing.  Judge Grosko ordered that a bench warrant be issued against James Davis and set a cash bond of $250.

On October 7, 2010, Butaud sent Plaintiff a dunning letter informing him of the judge's order authorizing an arrest warrant and the $250 cash bond.  The letter said it was being sent "as a courtesy" to give Plaintiff an opportunity to set up a payment plan to pay the balance of his account, and that if he wished to do so he should contact Butaud within 10 days.  Upon receiving the letter, Plaintiff contacted Butaud and agreed to a payment plan that called for a $100 payment for the first three months.  Plaintiff made one payment on November 6, 2010, and a second payment on January 15, 2010.  Plaintiff's payments did not comply with the payment

plan.[11]

On January 19, 2011, Butaud filed a Praecipe asking the Wyandotte County District Court to issue "a motion bench warrant." A Bench Warrant prepared by Butaud was submitted with the Praecipe. Judge Grosko signed the warrant the same day. Plaintiff alleges that the Bench Warrant "was not prepared and submitted to serve the interests of justice, preserve the integrity of judicial proceedings or for any other proper purpose but was instead prepared and submitted for the purpose of using the Bench Warrant as leverage in the collection of a debt and for the purpose of harassing and oppressing Mr. Davis."[12] Plaintiff notes that the Bench Warrant was issued over three months after it was ordered by the judge, and he alleges that Defendants failed to inform the court that NFM had entered into payment arrangements and received payments after the judge had first authorized a warrant. On January 26, 2011, at about 9:30 p.m., two Wyandotte County Sheriff's Deputies served the warrant on Plaintiff. They arrested him, handcuffed him, and took him to jail.

After his arrest, Plaintiff with the help of his girlfriend was able to pay the $250 appearance bond to secure his release. His court date was set for February 9, 2011, at which time he appeared before Judge Grosko. Plaintiff was represented by a lawyer from Kansas Legal Services. The judge ordered the $250 bond forfeited to NFM and continued the hearing in aid of execution. The hearing in aid was subsequently held on April 13, 2011. Plaintiff appeared and again testified about his assets. Plaintiff contends Defendants had no reason to believe his

---

[11]The payment plan agreement is outlined in a letter from Butaud to Plaintiff dated October 18, 2010, and is attached to Plaintiff's Complaint. The letter asserts that the first payment was due November 5, 2010 and payments were due thereafter on the 5th of each month. It also provided that if payments were not received according to the agreement, the law firm would pursue further collection efforts without any reminders being sent. Doc. 1-2.

[12]Doc. 1, ¶ 57.

financial circumstances had changed since the first examination.

Plaintiff alleges that the multiple applications and examinations of him by the Defendants were for the purpose of harassing and oppressing him, and were done by Defendants without any reason to believe his financial circumstances had changed from the first examination.  Plaintiff alleges that he suffered $250 in actual damages plus emotional distress and other intangible damages.

Count 1 of the Complaint alleges that Evans & Mullinix, P.C., and Jo Ann Butaud violated the FDCPA by repeatedly causing Mr. Davis to be summoned for examinations in aid of execution; by failing to inform the district court issuing a bench warrant that Davis had made payment arrangements and had made some payments; by preparing and filing a praecipe and bench warrant and causing Mr. Davis to be arrested; and by instigating the forfeiture of Mr. Davis' appearance bond.  Plaintiff contends these actions harassed, oppressed or abused him in violation of 15 U.S.C. § 1692d and amounted to unfair practices in violation of § 1692f.  Count 2 alleges that all three Defendants are liable for abuse of process, as Defendants allegedly engaged in an illegal or improper use of process for the purpose of harassing or causing hardship to Plaintiff.  The third count of the Complaint alleges that NFM's conduct violated the KCPA.

**III.      Discussion**

      **A.      Abuse of Process**

NFM contends Plaintiff fails to state a viable claim for abuse of process because he does not allege facts showing that NFM used judicial process for a purpose other than the one for which it was intended.  NFM argues that a judgment creditor's use of statutes and rules of civil procedure to enforce a money judgment—through garnishment, debtor examinations, and bench

warrants—does not constitute abuse of process. Plaintiff, meanwhile, contends a viable abuse of process claim can be based on any of three processes used by NFM: the October 6, 2010 bench warrant; the multiple applications and orders for debtor examinations; and the February 9, 2010, application and order for garnishment to Citibank. Plaintiff argues that NFM improperly used the bench warrant as leverage to collect a debt rather than to preserve the integrity of judicial proceedings, that it used the debtor exams to harass him rather than to discover assets, and that it used the Citibank garnishment to harass him by attempting to garnish exempt funds.

An abuse of process is based on the use of the judicial system for some process other than its intended purpose.[13] In Kansas, "abuse of process is concerned with process employed 'in a manner not contemplated by law, or to obtain an object which such process is not intended by law to effect.'"[14] "The gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."[15] The elements of an abuse of process claim under Kansas law are: (1) that the defendant made an illegal, improper, perverted use of the process (a use neither warranted nor authorized by the process); (2) that the defendant had an ulterior motive or purpose in exercising such use of the process; and (3) that damage resulted to the plaintiff from the irregularity.[16] "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and

---

[13]*Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.,* 26 P.2d 1284, 1287 (Kan. Ct. App. 2001).

[14]*Tappen v. Ager*, 599 F.2d 376, 380 (10th Cir.1979) (quoting *Jackson & Scherer, Inc. v. Washburn*, 496 P.2d 1358, 1366 (Kan. 1972)); *see Bowling v. United States*, No. 04-2320-JAR, 2009 WL 723226, at *9 (D. Kan. Mar. 17, 2009).

[15]*Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994).

[16]*Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980); *Tappen*, 599 F.2d at 380; *see also Lindenman v. Umscheid*, 875 P.2d 964, 973 (Kan. 1994).

intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."[17]

### 1. October 6th Bench Warrant

Plaintiff's allegations that the bench warrant was improperly used as leverage to collect a debt fail to state a viable claim for abuse of process. Under Kansas statutes governing limited actions,[18] a judgment creditor is entitled to have an order for a hearing in aid of execution, and if the person fails to appear as ordered the court must issue a contempt citation directing the person to appear and show cause.[19] If the person again fails to appear, the court may issue a bench warrant commanding the sheriff to arrest the person to answer for contempt.[20] Plaintiff failed to appear at a hearing in aid of execution and then a show cause hearing, leading the judge to authorize a warrant. Under the procedures utilized by the court, it was up to NFM to file the paperwork to obtain the warrant. The fact that NFM contacted Plaintiff before doing so and set up a payment plan with him does not support an abuse of process claim. The "leverage" Plaintiff complains of was actually a product of his own failure to appear as ordered by the court. NFM's alleged actions on their face show no illegal or improper use of process, but an attempt to collect the underlying judgment owed by Plaintiff without resorting to a warrant to force compliance.[21]

---

[17]Restatement (Second) of Torts § 682 cmt. b (1977).

[18]Both parties cite the Kansas statutes pertaining to limited actions, so presumably the case between NFM and Plaintiff was a limited action. *See* K.S.A. §§ 61-2801–4105.

[19]*Id.* § 61-3606.

[20]*Id.* § 61-3608.

[21]*Cf. McClenny v. Inverarity*, 103 P. 82, 83 (Kan. 1909) (finding plaintiff had abuse of process claim where evidence showed that arrest warrant was used to extort money beyond what was owed).

NFM sought a warrant only after Plaintiff failed to appear and then failed to comply with the parties' payment plan, which does not plausibly show a misuse of process with an ulterior motive or purpose.[22] As for NFM's alleged failure to inform the court of the payment plan when NFM obtained the warrant, even assuming a "bad motive" prompted that failure, the failure does not show that NFM misused the warrant for an end other than that for which it was designed. Like *Porter*, Plaintiff's allegations show that NFM obtained a warrant in conformance with statutory procedures and for a purpose sanctioned by Kansas law—to force a recalcitrant debtor to appear and testify under oath concerning his assets.[23] The allegation does not support a claim for abuse of process.

### 2. Multiple Debtor Exams

Plaintiff contends the debtor exams obtained by NFM were for the purpose of harassment and amounted to abuse of process. This claim is based primarily on an allegation that NFM "had no reason to believe that Mr. Davis had experienced any change in circumstances that would make the payment of the judgment possible" when it sought the repeat examinations.

---

[22]*Jones v. Noblit*, 260 P.3d 1249 (Table), 2011 WL 4716337 (Kan. Ct. App. Oct. 7, 2011) ("The facts here, however, do not demonstrate that sort of ulterior purpose. The collection action and the postjudgment procedures were used in conformity with the governing statutes and for relief commonly sought in such proceedings. While the motives behind the collection action might be disputed on the evidence in this record, that does not support a claim for abuse of process. In *Porter*, the Kansas Supreme Court held that a claim for abuse of process would not lie based on postjudgment collection procedures the plaintiff contended were harassing and abusive but which conformed to the statutory procedures. 228 Kan. 654–55. There, Porter was arrested on a warrant issued after he failed to appear for a debtor's examination in a collection case in which a default judgment had been entered."); *see also Fraser v. Law Offices of Parker & Parker*, No. 11-10585, 2011 WL 4537028, at *6 (E.D. Mich. Sept. 30, 2011) ("Defendants did not abuse the process by requesting that the court issue bench warrants because Defendants were exercising legal means to satisfy a judgment against Plaintiff.").

[23]*See* William L. Prosser, Law on Torts § 121, at 857 (4th ed. 1978) ("Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.").

Kansas law governing limited actions provides that after a judgment debtor appears for an initial hearing in aid of execution, "the court may order the debtor to return to court from time to time to furnish current information."[24] It states that in order "[t]o avoid unnecessary filings, the court shall adopt a policy limiting the frequency with which the debtor may be ordered to return to court."[25] If a debtor has made regular payments as agreed between the parties, he shall not be required to return to court more frequently than yearly.[26] Plaintiff asserts that the District Court of Wyandotte County has no rule on the subject—and this Court has found no such rule—although at least four other judicial districts in Kansas have adopted specific rules. The period allowed for such "order backs" varies among these courts, with the most lenient allowing one per month and the strictest allowing no more than one every four months, with two courts in between, and all of them allowing exceptions for good cause shown.[27]

Although Plaintiff made two (late) payments after his initial hearing, his own allegations show that he did not make the regular payments agreed upon in his payment plan with NFM. He could therefore be required by the court to return to provide current information. Plaintiff contends NFM abused this process by seeking examinations "when it had no reason to believe" his circumstances had changed. But it is entirely proper for a creditor to seek an additional hearing when it *lacks knowledge* of the debtor's current circumstances and needs to determine if there has been a change. Plaintiff was unemployed at the time of his initial hearing, but it was

---

[24]K.S.A. § 61-3605.

[25]*Id.*

[26]*Id.*

[27]Rules of Court for the Third Judicial District (Kansas), DCR 3.213(8); Rules of Court for Seventh Judicial District, Rule 7(B)(1); Rules of Court for the Fourteenth Judicial District, Rule 22; Rules of Court for the Twenty-Fifth Judicial District, Rule 115.

conceivable that he might secure employment sometime thereafter and acquire the means to pay the judgment.

NFM obtained a second debtor exam about seven months after the initial hearing. NFM applied for a third exam only ten days after the second hearing, but the hearing itself was set for two months later. Due to Plaintiff's failure to appear, the latter examination was not actually held until some eleven months after the application. The Court concludes that these facts do not support a claim for abuse of process. The frequency of the scheduled hearings alone does not plausibly show a primary purpose of harassment, particularly in light of the potential for change in Plaintiff's employment circumstances at any time.

Under *Twombly* and *Iqbal*, the degree of specificity necessary to establish "plausibility" depends on context and the type of case involved.[28] This case involves a judgment debtor claiming abuse in a creditor's use of statutorily-authorized hearings, which were approved by a neutral judge, which did not violate any rule of the court issuing the orders, and which are designed to aid a creditor in collecting a valid judgment. In this context, a conclusory allegation that the creditor used such hearings "for harassment" is not sufficient. Absent some facts that could reasonably show the examination process was not legitimately used for the proper purpose of acquiring information about the Plaintiff's current financial status, the current allegations do not support a plausible claim for abuse of process.[29] The Court notes the Complaint does not

---

[28]*Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

[29]*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (holding that where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief); *cf. Iama, Inc. v. Law Offices of Peter E. Meltzer*, No. 04141, CONTROL 112062, 2003 WL 1875107, at *4 (Pa. Ct. C.P. Mar. 17, 2003) (finding conclusory allegation that process was without proper purpose and was intended to harass was insufficient; "[p]roof of abuse of process based on the allegations of the Complaint would require a demonstration that the Praecipes and resulting Writs were [] not used for the purpose for which such filings are intended, *i.e*., that Defendants' ultimate objective was something

allege that NFM had actual knowledge at the time of the scheduled hearings that Plaintiff was still unemployed and had no assets.[30] It alleges only that NFM had no reason to believe his circumstances had changed when it sought the hearings. But as noted above, his unemployment status could have changed at any time, and a debtor examination can be legitimately used by a creditor when it lacks updated information on the debtor's status. Plaintiff does not allege that NFM actually possessed the updated information that it sought through the examinations. Under these circumstances, NFM's motion to dismiss this claim will be granted.

### 3. Citibank Garnishment

NFM similarly argues that Plaintiff's allegations regarding the Citibank garnishment show nothing more than a creditor pursuing authorized post-judgment remedies, in accordance with Kansas law, for the purpose of collecting a judgment. NFM also points out that the judge that issued the garnishment ordered it released following a hearing on Plaintiff's objection, all in accordance with the procedures contemplated by Kansas law.

No Kansas cases have been cited involving allegations that a creditor knowingly garnished exempt property such as unemployment benefits for the purpose of harassment.[31] The Kansas Supreme Court has previously recognized a claim for wrongful garnishment where a

---

other than to collect a judgment. Plaintiffs have plead no such facts." (citation omitted)); *Root Grain Co. v. Livengood*, 100 P.2d 714, 717 (Kan. 1940) ("[a] liberal use of acerbic adjectives and adverbs does not serve to strengthen the facts alleged to plead a cause of action or defense.").

[30] Kansas law provides that the court may cancel the scheduled hearing if the judgment debtor has furnished to the judgment creditor satisfactory information concerning the debtor's property and income prior to the date and time for the hearing. K.S.A. § 61-3604(b).

[31] Kansas unemployment benefits when due or payable are generally exempt from attachment. When such benefits are received by an individual, they are (with one exception not relevant here) exempt from any remedy whatsoever for the collection of debt, so long as they are not mingled with other funds of the recipient. K.S.A. § 44-718(c).

creditor filed an action in Missouri allegedly for the purpose of defeating a debtor's exemption rights under Kansas law.[32]  Other states have recognized that multiple attempts or threats to garnish exempt funds can support a claim for abuse of process.[33]  At least one court has held that a single instance of garnishing exempt property was not sufficient for abuse of process, apparently reasoning that because the exemptions were a personal privilege of the debtor and were not self-executing, the creditor was entitled to seek garnishment unless and until an exemption was claimed and adjudicated.[34]  Nevertheless, there appears to be no hard and fast rule in other states that a claim for abuse of process requires prior attempts to garnish exempt property.  Proof of multiple attempts may make it evident that a process was used for the improper purpose of harassment rather than for legitimate debt collection, but the general rule is simply that an "[a]buse in the seizure of property may . . . consist of doing something . . . in excess of that which is warranted, such as . . . seizing property known to be exempt from attachment or execution."[35]

---

[32]*Owens v. Deutch*, 137 P.2d 181, 185 (Kan. 1943); *see also Stark v. Bare*, 17 P. 826, 828 (Kan. 1888) ("We think it is a wrong which may not only be restrained by injunction, but that the citizen who proceeds and inflicts the wrong is liable to the debtor to the extent of the injury sustained."); 6 Am. Jur. 2d *Attachment* § 561 (explaining that where an order of attachment or garnishment is improperly obtained or tortiously employed, the defendant may have several ways to redress injuries caused, including by proceeding on an attachment bond if one was given, suing for malicious or wrongful garnishment, or maintaining an action for abuse of process or malicious prosecution).

[33]*See e.g.*, *Czap v. Credit Bureau of Santa Clara Valley*, 7 Cal.App.3d 1, 5 (1970) (finding the plaintiff stated a claim where creditor obtained levy of exempt wages and threatened to obtain others in an attempt to jeopardize plaintiff's employment and thereby coerce payment from exempt wages); *Layton v. Chase*, 144 N.W.2d 561, 564 (S.D. 1966) ("The repeated or successive garnishment of exempt property may, under certain circumstances, support an action for the abuse of process."); *see also Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 444 (6th Cir. 2006) ("The case law cited above demonstrates that states have allowed claims where a plaintiff alleges an improper garnishment, whether the claim is one of malicious prosecution, abuse of process, or wrongful garnishment. This includes a claim that the defendant improperly garnished exempt property.").

[34]*Layton*, 144 N.W.2d at 564.

[35]1 Am. Jur. 2d *Abuse of Process* §13.

The Court concludes the elements of a claim for abuse of process could be met upon a proper showing that a creditor knowingly garnished exempt unemployment benefits primarily for the purpose of causing harassment. Such an act is comparable to *knowingly* attaching excess funds for an improper purpose, which has long been recognized as grounds for abuse of process in most states.[36] It is plausible to infer when a creditor intentionally ties up funds that it knows are completely exempted by law that it is using the process not for the legitimate purpose of debt collection, but rather to harass the debtor or to coerce payment from statutorily exempt funds.[37] In such circumstances, the eventual validation of the exemption and release of the garnishment may not be adequate to remedy damages caused to the debtor from the tortious abuse of the process. The Court recognizes that NFM's attorneys contend they did not know that Plaintiff's unemployment benefits were deposited on the Citibank debit card, and that they only knew Plaintiff had some type of account with Citibank.[38] On a motion to dismiss based on the pleadings, however, the court accepts the Plaintiff's factual allegations in the Complaint as true.

---

[36]*See* Thomas J. Goger, *Liability of Creditor for Excessive Attachment or Garnishment*, 56 A.L.R.3d 493, §5 (1974) ( "The action for attachment or garnishment of an excessive amount of the debtor's property being one for abuse of process, several courts have pointed out that in order to recover in such an action, the debtor must demonstrate not only that the attachment or garnishment was excessive, but also that it was instigated by the creditor for some ulterior purpose beyond that of simply securing the alleged debt."); *cf. Lukens v. First Natl. Bank*, 101 P.2d 914, 918–19 (Kan. 1940) (recognizing claim for wrongful garnishment where creditor with a judgment against a father garnished wheat belonging to his son); *Vanover v. Cook*, 260 F.3d, 1182, 1191, n.4 (10th Cir. 2001) (expressing no opinion on whether allegation of excessive garnishment for the purpose of forcing excess settlement would support claim for abuse of process).

[37]*See Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1053 (S.D. Iowa 2007) (allegation that creditor had practice of garnishing funds that it knew were exempt was sufficient to support claim of improper purpose); *cf. Wellsville Bank v. Sutterby*, 752 P.2d 700, 703 (Kan. Ct. App. 1988) (holding undisputed facts on summary judgment showed creditors had no motive other than to execute on a valid judgment); *Vanover v. Cook*, 69 F. Supp. 2d 1331, 1335 (D. Kan. 1999) (explaining that for abuse of process to occur "[t]he defendant must seek the garnishment 'primarily to accomplish a purpose for which it is not designed.'"), *aff'd,* 260 F.3d 1182 (10th Cir. 2001).

[38] Doc. 6 ¶ 15.

15

Assuming Plaintiff's allegations are true—including that Defendant NFM knew it was garnishing exempt unemployment benefits and that Plaintiff suffered damage as a result—they show a right to relief for abuse of process.  NFM's motion to dismiss this claim will therefore be denied.

> B. **Kansas Consumer Protection Act**

The third count of the Complaint alleges that the acts of Defendant described in the Complaint "constitute multiple violations of the Kansas Consumer Protection Act, K.S.A. 50-623 et seq."  This blanket allegation is neither sufficient on its face to show a plausible claim for relief nor adequate to provide fair notice to Defendant of the basis of Plaintiff's claim under the KCPA.[39]  The motion to dismiss the KCPA claim against NFM will therefore be granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant Nebraska Furniture Mart's Motion to Dismiss (Doc. 7) is **GRANTED IN PART and DENIED IN PART**.  The motion is granted with respect Plaintiff's claim against NFM for violation of the KCPA, and also as to Plaintiff's abuse of process claim against NFM insofar as it is based on the October 6, 2010 bench warrant and the multiple debtor examinations.  The motion to dismiss Plaintiff's abuse of process claim against NFM is denied insofar as it is based on the February 9, 2010 Citibank garnishment.

**IT IS SO ORDERED**.

Dated: <u>April 13, 2012</u>

                                                   <u>S/ Julie A. Robinson</u>
                                                 JULIE A. ROBINSON

---

[39]*See e.g.*, *Gibson v. Credit Suisse AG*, No. CV 10-1-EJL-REB, 2012 WL 529702, at *23 (D. Idaho Feb. 17, 2012) (finding general allegation of consumer protection act violation insufficient); *McCurdy v. Wells Fargo Bank, N.A.*, No. 2:10-CV-00880, 2010 WL 4102943, at *3 (D. Nev. Oct. 18, 2010) (finding complaint that failed to clarify which provisions of Act were violated does not plausibly show defendant is liable).

UNITED STATES DISTRICT JUDGE