IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES T. DAVIS, )
)
        Plaintiff, )
v. )
) Case No.11-2559-JAR
)
NEBRASKA FURNITURE MART, INC.,)
EVANS & MULLINIX, P.A., and )
JO ANN BUTAUD, )
        Defendants. )
_____)

**MEMORANDUM AND ORDER**

      Plaintiff James T. Davis brings this lawsuit against the law firm Evans & Mullinix, P.A. and Jo Ann Butaud, an attorney who is a shareholder and officer of Evans & Mullinix (collectively "Defendants"), for violation of the Fair Debt Collection Practices Act ("FDCPA") and for Abuse of Process.[1] This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 58). Plaintiff Davis has responded to the motion, and as explained below, Defendants' motion for summary judgment is granted.

**I.    Summary Judgment Standard**

      Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2] In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[1] After the Court dismissed some claims on Nebraska Furniture Mart's (NFM) motion to dismiss, Plaintiff and NFM entered into a Stipulation of Dismissal of the remaining claim against NFM. (Doc. 53).

[2] Fed. R. Civ. P. 56(a).

the light most favorable to the nonmoving party.[3] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmoving party

---

[3] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

may not simply rest upon her pleadings to satisfy her burden.[10] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[13] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[14]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[16]

## II.   Uncontroverted Facts

Plaintiff has admitted virtually all of the material facts set forth by Defendants, except for

---

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[12]*Adams*, 233 F.3d at 1246.

[13]Fed. R. Civ. P. 56(c)(4).

[14]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[15]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[16]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

Defendants' description of some of Plaintiff's claims.  But the description of Plaintiff's claims is neither a factual dispute, nor a dispute material to the issues at hand.  Plaintiff asserts additional facts, many of which Defendants do not dispute, except as to their materiality.  The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to Plaintiff.

Nebraska Furniture Mart ("NFM") issued a line of credit to Plaintiff on or about October 26, 2007; and Plaintiff purchased furniture and other goods from NFM.  Plaintiff later defaulted on his payments to NFM.  Thereafter, NFM engaged Defendant Evans & Mullinix to collect the debt owed by Plaintiff, and on March 19, 2009, NFM forwarded its file to Defendant Evans & Mullinix.

Sometime after March 19, 2009, Defendant Jo Ann Butaud sent a demand letter to Plaintiff, informing him that NFM had declared the balance due and threatening to file suit if Plaintiff failed to make arrangements to pay.  Butaud is an attorney licensed to practice in Kansas and Missouri and is a shareholder and officer of Evans & Mullinix.  On March 27, 2009, Defendants filed a lawsuit on behalf of NFM against Plaintiff in the District Court of Wyandotte County, Kansas, to collect amounts owed by Plaintiff to NFM.

On May 20, 2009, a Consent Judgment was entered in favor of NFM in the amount of $1,987.00, plus costs, prejudgment interest, attorney's fees, and interest.  Immediately after the hearing on that date, May 20, Plaintiff and Defendants entered into a payment agreement. Plaintiff agreed to pay $150 by June 17, 2009, another $150 by July 17, 2009, and then to renegotiate the remaining balance until paid in full.  Defendants sent and Plaintiff received a letter dated May 28, 2009, memorializing this agreement, and advising Plaintiff that if he did not remit the payments as agreed, Defendants would pursue all further collection remedies for NFM.

4

Plaintiff did not remit payments in the agreed upon amounts, nor upon the agreed deadlines. Instead, Plaintiff paid $100 on June 24, 2009 and $50 on July 2, 2009. Plaintiff made both of these payments with his Citibank debit card. The Kansas Department of Labor, through Citibank, deposited unemployment benefits payments onto this debit card. Plaintiff did not disclose to Defendants, at that time, that this Citibank debit card was how he received unemployment benefits from the state.

On September 2, 2009, Defendants filed an Application for Examination of Judgment Debtor; Judge Grosko approved the application on that same date and issued an Order directing Plaintiff to appear for a Hearing in Aid of Execution on October 14, 2009. Plaintiff was served with this Order, and duly appeared at the hearing on October 14, where he was examined under oath by Defendant Butaud. Plaintiff testified that he was unemployed, that he had little, if any, property with which to satisfy the judgment, and that he had a debit card from Citibank. Plaintiff did not testify or otherwise advise Defendant Butaud of the source of the funds in the Citibank account.

On October 14, 2009, Plaintiff and Defendant Butaud agreed to a new payment plan: Plaintiff would pay $75 every two weeks, starting on October 28, 2009, until the debt was paid in full. Defendants sent and Plaintiff received a letter dated October 16, 2009, memorializing this agreement and again advising Plaintiff that if he did not remit the payments as agreed, Defendants would pursue all further collection remedies for NFM. Plaintiff did not comply with the terms of this agreement either. Instead, on November 12, 2009, Plaintiff made a single, untimely payment of $75 with his Citibank debit card, and then no additional payments until November 8, 2010.

5

On January 15, 2010, Defendants filed a Request for Garnishment, seeking to attach funds by Brotherhood Bank; an Order of Garnishment was issued, but eventually released by Defendants without attaching any funds. Brotherhood Bank reported that it did not hold any of Plaintiff's funds in its possession.

On February 9, 2010, Defendants filed a Request for Garnishment to attach funds held by Citibank; and an Order of Garnishment was issued. On March 4, 2010, Plaintiff filed a Request for Hearing on the Request for Garnishment of the funds held by Citibank, in which Plaintiff asserted that the Citibank funds were unemployment benefits and thus exempt from garnishment. Defendants were previously unaware that Plaintiff was receiving unemployment benefits and were unaware that the source of the funds on the Citibank account was unemployment benefits. In fact, Plaintiff had made three payments using the Citibank debit card. On March 17, 2010, Defendants released the Citibank garnishment. No funds were ever attached from the Citibank account and Plaintiff received all of the unemployment benefits that were issued to him.

Defendants continued to pursue collection of the debt. On application of Defendants, the court scheduled a Hearing in Aid of Execution for May 19, 2010. Plaintiff appeared at the hearing, and testified that although he was still unemployed, he was submitting job applications and was seriously attempting to find employment. Later, in approximately late July or early August 2010, Plaintiff in fact began working at Outback Steakhouse and Mutual of Omaha. Plaintiff did not advise Defendants that he had obtained employment.

On application of Defendants, the court scheduled a third Hearing in Aid of Execution for July 28, 2010. Although Plaintiff received notice, he did not appear. The court issued a civil citation for contempt, noting on the docket sheet that Plaintiff "fails to appear for Debtors

6

exam." At Defendants' request, the court scheduled the hearing on the Citation to Show Cause for October 6, 2010. Despite receiving notice, Plaintiff failed to appear at the contempt hearing. The court ordered the issuance of a bench warrant, noting on the docket sheet that Plaintiff had failed to appear for the hearing. The court also set a cash bond of $250. It was the court's practice to have the judgment creditor prepare the bench warrant under these circumstances. Defendants did not prepare a bench warrant for the court to issue until on or before January 19, 2011, the date when the court issued the bench warrant.

Between October 6, 2010 and January 19, 2011, Defendants continued to engage in collection activity. On October 7, 2010, Defendant Butaud sent a letter to Plaintiff advising him of the order for a bench warrant and advising Plaintiff that Defendants were providing him with an opportunity to pay the judgment. Plaintiff contacted Defendant Butaud in response to this letter, and the parties entered into still another agreement for a payment plan. Defendant Butaud sent and Plaintiff received a letter dated October 18, 2010, which memorialized their agreement, that the first payment was due November 5, 2010 and on the 5th of each month thereafter until the debt was paid, and that the first three monthly payments would be in the amount of $100, then three monthly payments of $125, then $150 monthly payments thereafter. The October 18, 2010 letter warned Plaintiff that "if payments are not received according to this agreement, we will have no choice but to pursue all further collection remedies for our client. No reminders will be sent regarding this plan. It is up to you to make timely payments." Nonetheless, Plaintiff made only two payments, both of which were untimely, under the agreed payment plan. He made a payment of $100 on November 8, 2010, and a payment of $100 on January 15, 2011.

On January 19, 2011, the court issued the bench warrant it had ordered on October 6,

7

2010.  On January 25, 2011, Wyandotte County Sheriff's deputies arrested Plaintiff on the warrant and took him into custody.  Plaintiff posted the $250 bond to secure his release from jail the next day.   On February 9, 2011, Plaintiff appeared with counsel from Kansas Legal Services at a hearing and Judge Grosko ordered the $250 bond forfeited to NFM.  A Hearing in Aid of Execution was held on April 13, 2011.  At this hearing, Plaintiff advised Defendants that he had obtained employment at Outback Steakhouse and Mutual of Omaha.  Plaintiff filed the instant action against Defendants on October 6, 2011.

## III. Discussion

Plaintiff brings claims against Defendants under the Fair Debt Collection Practices Act ("FDCPA"),[17] as well as a state law claim for abuse of process.  While it is not entirely clear, it appears that Plaintiff alleges that the entirety of Defendants' conduct in this case is actionable under the federal and state law claims.  It is also unclear whether Plaintiff has abandoned some of his claims, as Defendants posit, given the limited scope of Plaintiff's arguments in his memorandum in response to Defendants' motion for summary judgment.  Nonetheless, the Court will address all claims in the Complaint.  In essence, Plaintiff claims that Defendants violated the FDCPA, and committed an abuse of process by:  (1) repeatedly causing Plaintiff to be summonsed to court for examinations in aid of execution, when they had no reason to believe that he had experienced any change in financial circumstances, and thus for purposes of harassing Plaintiff; (2) failing to inform the court that after it had ordered the bench warrant, Defendants had entered into a payment agreement with Plaintiff, and by failing to have the order to issue bench warrant set aside despite having accepted payments from Plaintiff; (3) preparing

---

[17] 15 U.S.C. § 1692.

the bench warrant for the court's issuance despite having accepted payments from Plaintiff; (4) garnishing the proceeds of Plaintiff's unemployment benefits in his Citibank debit account; and (5) instigating the unlawful forfeiture of Plaintiff's $250 appearance bond to NFM.

### A. Fair Debt Collection Practices Act Claim

The purpose of the FDCPA is to "eliminate abusive debt collections practices by debt collectors,"[18] so as to protect consumers from unscrupulous collections. The FDCPA broadly prohibits unfair or unconscionable collections methods. It prohibits conduct which harasses, oppresses or abuses any person in connection with the collection of a debt,[19] as well as the use of any false, deceptive or misleading statements or means in connection with the collection of a debt.[20] It prohibits the use of unfair or unconscionable collection practices or methods.[21] The FDCPA is a strict liability statute; thus, a consumer need not show intentional conduct by the debt collector to be entitled to damages, rather the degree of a debt collector's culpability may only be considered in computing the amount of damages.[22]

Plaintiff claims that Defendants violated the FDCPA by garnishing his Citibank debit account that contained unemployment benefits, which is exempt property under the law. To be sure, unemployment benefits are property that is exempt from garnishment under Kansas law.[23]

---

[18] 15 U.S.C. § 1692(e).

[19] 15 U.S.C. § 1692d.

[20] 15 U.S.C. § 1692e.

[21] 15 U.S.C. § 1692f.

[22] 15 U.S.C. § 1692k(a)(2)(A); *Clomon v. Jackson*, 988 F.2d 1314, 1321–22 (2nd Cir. 1993).

[23] K.S.A. § 60-723(d) (funds, property, credits and indebtedness of the state are exempt from garnishment); K.S.A. § 60-724(3) (prohibits judgment of garnishment on money or property exempt by law).

But the FDCPA proscribes taking *nonjudicial* action to effect or disable property that is exempt under the law.[24] Here, Defendants took judicial action, not nonjudicial action, in attempting to garnish Plaintiff's Citibank debit account.

After the court issued a bench warrant, Defendants and Plaintiff entered into a new payment arrangement and Defendants accepted payments under the new arrangement. Plaintiff claims Defendants violated the FDCPA by failing to inform the court of this, and by not taking action to have the bench warrant set aside on this basis. But Plaintiff misinterprets the basis for the court's bench warrant. The court did not issue a bench warrant because Plaintiff defaulted on payments to Defendants. Rather, the court issued the bench warrant because Plaintiff failed to appear at a hearing in aid of execution, and then further failed to appear at a hearing on the court's order to show cause why Plaintiff had failed to appear at the hearing in aid of execution. The fact that the parties entered into a payment arrangement was immaterial to the court's issuance of the bench warrant for Plaintiff's failure to appear at two court-ordered hearings. And, the court's rules of procedure allow the court to issue a bench warrant upon a party's indirect civil contempt of court for failing to appear as ordered.[25]

Moreover, the fact that Plaintiff and Defendants (repeatedly) entered into payment plans in consideration of Defendants' foregoing the use of judicial means to collect the debt, in no way foreclosed Defendants from using proper judicial means to collect the valid judgment once Plaintiff failed to abide by the terms of the negotiated payment plan(s). Indeed, on each occasion that Plaintiff and Defendants reached a payment agreement, Defendants memorialized their

---

[24] 15 U.S.C. § 1692f(6)(C).

[25] Rule 126–*Ex Parte* Orders and Contempts, District Court of Wyandotte County, Kansas, 29th Judicial District, Local Rules, Adopted August 8, 2007.

agreement, including language giving Defendants the right to pursue other collection remedies in the event Plaintiff failed to make the agreed upon payments.

Plaintiff further claims that Defendants violated Sections 1692d, 1692e and 1692f of the FDCPA[26] by repeatedly causing him to be summoned to court for hearings in aid of execution, and by "instigating" the forfeiture of Plaintiff's bond to NFM. Section 1692d enumerates six types of conduct that constitute harassment, oppression or abuse of any person in connection with the collection of a debt. Plaintiff does not claim that Defendants engaged in any of these types of conduct: (1) use or threat of use of violence or other criminal means to harm him or his reputation or property; (2) use of obscene or profane language; (3) publication of his name on a list of consumers who refuse to pay debt, except to a consumer reporting agency or certain persons; (4) advertising the debt for sale to coerce his payment of the debt; (5) either causing his telephone to ring or engaging him or any other person in telephone conversation repeatedly or continuously with the intent to annoy, abuse or harass; or (6) placement of telephone calls without meaningful disclosure of the caller's identity.[27] None of the complained-of conduct falls within the ambit of Section 1692d.

Nor does any of the complained-of conduct fall within the ambit of Section 1692f, which proscribes eight types of conduct that constitute "unfair or unconscionable means to collect or attempt to collect any debt."[28] Plaintiff does not allege that Defendants accepted a postdated

---

[26] 15 U.S.C. §§ 1692d, 1692e and 1692f.

[27] 15 U.S.C. § 1692d.

[28] 15 U.S.C. § 1692f.

11

check from him,[29] or deposited or threatened to deposit a postdated check early,[30] or solicited a postdated check from him for purposes of threatening or instituting criminal prosecution.[31] Plaintiff does not allege that Defendants communicated with him by post card.[32] Nor does Plaintiff allege that Defendants used any improper language or symbol on communications with him,[33] or that Defendants caused him to incur phone, telegram or other types of charges for deceptive communications.[34]

To be sure, under Section 1692f a creditor may not collect any amount that is not "expressly authorized by the agreement creating the debt or permitted by law."[35] But all of Defendants' collection efforts were to collect a valid judgment, and thus its efforts to collect such amounts were permitted by law. There is simply no evidence that Defendants sought to collect amounts that were not included in NFM's valid judgment against Plaintiff. Moreover, all of Defendants' efforts to collect NFM's valid judgment were through judicial means, by motion or application and court order, and were permitted under various state statutes. As explained in the analysis of the abuse of process claim below, Defendants' efforts to collect the judgment by seeking periodic hearings in aid of execution were permissible under the law, as was the court's forfeiture to judgment creditor NFM of Plaintiff's bond for failure to appear.

---

[29] 15 U.S.C. §1692f(2).

[30] 15 U.S.C. §1692f(4)

[31] 15 U.S.C. §1692f(3).

[32] 15 U.S.C. §1692f(7).

[33] 15 U.S.C.. §1692f(8).

[34] 15 U.S.C. §1692f(5).

[35] 15 U.S.C. §1692f(1).

12

**B. Abuse of Process Claim**

An abuse of process claim is based on the use of the judicial system for some process other than its intended purpose.[36] In Kansas, abuse of process is concerned with process employed "in a manner not contemplated by law or to obtain an object which said process is not intended by law to effect."[37] "The gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."[38] And, the elements of an abuse of process claim in Kansas are: (1) that the creditor made an illegal, improper, perverted use of the process—that is a use neither warranted nor authorized by the process; (2) that the creditor had an ulterior motive or purpose in exercising such use of the process; and (3) that damage resulted to the Plaintiff from the irregularity.[39]

Because the Court grants summary judgment on the FDCPA claim, the Court need not decide the abuse of process claim. The Court has subject matter jurisdiction of the FDCPA claim, as it arises under a federal statute;[40] but the abuse of process claim is one that arises under state law. Nonetheless, because the abuse of process claim is based on the same conduct as the FDCPA claim, the Court exercises its discretion to exercise supplemental jurisdiction over the abuse of process claim;[41] and the Court grants summary judgment to Defendants on the abuse of

---

[36] *Gatlin v. Hartley, Nicholson 7 Arnett, P.A.*, 26 P.2d 1284, 1287 (Kan. Ct. App. 2001).

[37] *Tappen v. Ager*, 599 F.2d 376, 380 (10th Cir. 1979) (citation omitted).

[38] *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994) (citations omitted).

[39] *Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980); *Tappen, supra*, 599 F.2d at 380; Restatement (Second) of Torts § 682 cmt.b (1977).

[40] 28 U.S.C. § 1331.

[41] 28 U.S.C. § 1367.

process claim as well.

Here, Plaintiff's Complaint alleges that Defendants committed abuse of process by repeatedly scheduling hearings in aid of execution while knowing that Plaintiff had no change in economic circumstances, and seeking a bond of $250, which was subsequently "unlawfully forfeited" to NFM. Plaintiff alleges that Defendants engaged in illegal or improper use of process for the purpose of harassing or causing hardship to Plaintiff. The gravamen of Plaintiff's Complaint is that Defendants wrongfully scheduled repeated hearings in aid of execution when Defendants knew he was unemployed or did not have the financial means to pay the debt. But, Plaintiff's Complaint does not state a perversion of the process. It is undisputed that Plaintiff defaulted on his debt to NFM, that NFM obtained an enforceable judgment, and that in the process of collecting the debt, Defendants utilized legitimate court procedures, including hearings in aid of execution and garnishments, and when Plaintiff failed to appear for hearings, a citation in contempt and ultimately a bench warrant to assure Plaintiff's appearance at a hearing in aid of execution. Indeed, Judge Grosko ordered these procedures upon motion or application of Defendants. These are all legitimate court processes a creditor may use to collect a debt. And, Defendants employed these processes for a legitimate end, collection of NFM's judgment.

Plaintiff's objection to the repeated scheduling of hearings in aid of execution is inapposite. First, a creditor can legitimately schedule more than one hearing in aid of execution, particularly to find out if a debtor's status has changed such that he is able to pay. In this case, there is no evidence that Defendants scheduled hearings despite knowing that Plaintiff's circumstances were static. On the contrary, in May and October 2009, Plaintiff entered into payment agreements with Defendants, never advising them that his source of funds was

14

unemployment benefits. In May 2010, at another hearing in aid of execution, Plaintiff advised Defendants that he was still unemployed but vigorously looking for work. Defendants took no additional action to collect the judgment until late July 2010; but Defendants were not able to examine Plaintiff for he did not appear at the hearing on July 28, 2010. Notably, by that time, Plaintiff had secured two jobs. When Plaintiff again failed to appear at another hearing on October 6, 2010, Defendants contacted Plaintiff and they entered into still another repayment plan, upon which Plaintiff soon defaulted. Finally, after giving Plaintiff three months to comply with this newly-negotiated payment plan, Defendants sought service of the bench warrant.

In all, Defendants scheduled three hearings in aid of execution from October 2009 to July 2010; Plaintiff appeared at the first two but not the July 2010 hearing. By the time Plaintiff was arrested on the bench warrant in January 2011, after having failed to appear at a hearing in aid of execution and at a hearing on a contempt citation, Defendants had been trying to collect the judgment since October 2009, some 27 months. They attempted to garnish Brotherhood Bank; but it had no funds. They attempted to garnish Citibank; Plaintiff filed a response for the first time advising Defendants that those funds were exempt unemployment benefits, although he had made several payments from that account. In response to Plaintiff's filing, Defendants promptly released the garnishment; and Plaintiff cannot show that he was damaged because Defendants never obtained any of the exempt funds.

Moreover, with respect to a claim that Defendants improperly sought service of the bench warrant on Plaintiff, there is no evidence raising a material issue of fact that service of the bench warrant was improper, given Plaintiff's failure to appear at both the hearing in aid of execution and at the contempt hearing. To be sure, Plaintiff claims damage, having been incarcerated for a

15

day until he posted the bond, but that was a consequence of Plaintiff's failure to appear at two hearings ordered by the court. The contempt citation for failure to appear at the hearing in aid of execution was proper under the law;[42] and upon the Plaintiff's failure to appear at the contempt hearing, the bench warrant was warranted, authorized and proper.[43]

In all respects, Defendants employed proper process in seeking to collect NFM's judgment. Plaintiff essentially claims that Defendants engaged in abuse of process through aggressive use of court procedures. But, a claim based on aggressive use of proper procedures will not lie. In *Porter v. Stormont-Vail Hospital*, the Kansas Supreme Court held that a claim for abuse of process will not lie based on post-judgment collection procedures the plaintiff contends were harassing or abusive, but which conform to statutory procedures.[44] Moreover, given the prolonged period in which Defendants attempted to collect the debt, their repeated negotiations of new payment plans in the face of Plaintiff's repeated defaults, Defendants collection efforts could hardly be characterized as abusive, much less aggressive.

**Conclusion**

For the above-stated reasons, Defendants' motion for summary judgment is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 58) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: <u>July 24, 2013</u>

---

[42]K.S.A. § 61-3606.

[43]K.S.A. § 61-3608.

[44]612 P.2d at 416–17.

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE